EVAN C. NELSON, SBN 172957
enelson@brotherssmithlaw.com
BROTHERS SMITH LLP
2033 N. Main Street, Suite 720
Walnut Creek, California 94596
Telephone: 925 944 9700
Facsimile: 925 944 9701

Attorneys for Plaintiff
REBECCA EISENBERG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

REBECCA EISENBERG,

Plaintiff,

v.

SANTA CLARA VALLEY WATER DISTRICT, SANTA CLARA VALLEY WATER DISTRICT BOARD OF DIRECTORS, ENRICO ("RICK") CALLENDER, AND CARLOS ORELLANA,

Defendants.

Case No.

**COMPLAINT FOR DAMAGES; DECLARATORY RELIEF; AND INJUNCTIVE RELIEF FOR:**

**(1) WHISTLEBLOWER RETALIATION (False Claims Act, 31 U.S.C. § 3730(h));**
**(2) FEHA (Sex Discrimination, Harassment, and Retaliation);**
**(3) 42 U.S.C. § 1983 (Equal Protection);**
**(4) STATUTORY INDEMNIFICATION AND BREACH OF CONTRACT (Refusal to Indemnify and Pay Fees/Costs);**
**(5) 42 U.S.C. § 1985(3) (Conspiracy to Interfere with Civil Rights);**
**(6) 42 U.S.C. § 1986 (Action for Neglect to Prevent Conspiracy);**
**(7) 42 U.S.C. § 1983 (Violation of First Amendment Rights);**
**(8) 42 U.S.C. § 1983 (Violation of Fourteenth Amendment Due Process — Stigma-Plus);**
**(9) BROWN ACT VIOLATIONS;**
**(10) CALIFORNIA FALSE CLAIMS ACT RETALIATION (Cal. Gov't Code § 12653);**
**(11) BANE ACT (Cal. Civ. Code § 52.1);**
**(12) DEFAMATION; and**
**(13) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**DEMAND FOR JURY TRIAL**



BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

Plaintiff Rebecca Eisenberg brings this action against Enrico ("Rick") Callender, Carlos Orellana, Santa Clara Valley Water District, and Santa Clara Valley Water District Board of Directors alleges, on knowledge as to her own actions and otherwise upon information and belief, as follows:

**PARTIES**

1. Plaintiff Rebecca Eisenberg ("Plaintiff") is an individual who resides in the State of California in Santa Clara County. Plaintiff is a citizen of the State of California.

2. Upon information and belief, Enrico ("Rick") Callender ("Callender") is an individual who resides in the State of California.

3. Carlos Orellana ("Orellana") is an individual who resides in the State of California. At all relevant times until his resignation described below, Orellana served as the General Counsel/District Counsel of the Water District and is the former General Counsel/District Counsel of the Water District.

4. Santa Clara Valley Water District ("Water District") is a public agency organized and existing under the laws of the State of California, with its principal place of business in Santa Clara County, California.

5. Santa Clara Valley Water District Board of Directors (the "Board") is the Water District's governing legislative body and a public entity subject to suit. The Board has authority and responsibility to establish, adopt, and enforce the Water District's policies, procedures, customs, and practices; to supervise, direct, evaluate, and discipline the Water District's Board Appointed Officers, including the Chief Executive Officer ("CEO") and the District Counsel/General Counsel; to authorize and approve expenditures of public funds; and to take corrective and remedial action regarding misconduct, investigations, and discipline. The Board acts through its members, committees, officers, and agents, and at all relevant times had the power to prevent, correct, or ratify the conduct alleged herein.

6. Callender, Orellana, and Water District, collectively, are hereinafter referred to as "Defendants." The Board is also a Defendant, and references to "Defendants" herein include the Board unless otherwise specified.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States, including but not limited to claims under the False Claims Act (31 U.S.C. § 3730(h)), 42 U.S.C. §§ 1983, 1985, and 1986, and the First and Fourteenth Amendments of the United States Constitution, as set forth in the Causes of Action below. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy.

## DIVISION ASSIGNMENT (L-R 3.2)

8. Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b)(2), and divisional assignment is proper in the San Jose Division, in that a substantial part of the events or omissions giving rise to the claims occurred in this District, including the alleged acts of discrimination, retaliation, and other conduct by Defendants, all of which took place in Santa Clara County within the Northern District of California, San Jose Division.

## GENERAL ALLEGATIONS

9. Plaintiff was elected as a Director for District 7 of Santa Clara Valley Water District in November 2022 and was sworn in December 2022.

10. In early January 2023, Plaintiff observed that female Directors received approximately half as many committee appointments as male Directors, and Plaintiff had the fewest assignments.

11. In January 2023, Plaintiff filed a memorandum at her second official Board meeting pointing out gender bias in committee assignments and requested the Chair to reconsider assignments to ensure gender equity.

12. In January 2023, Plaintiff made public statements at televised Board Meetings questioning whether the District had intentionally misstated and/or concealed financial and risk disclosures on its application for a federal EPA WiFIA loan, as well as its statements to the State Water Commission under Prop 1 to provide funding for the former Pacheco Dam and Reservoir Expansion project.

13. Plaintiff, and all members of the Water District's Board and all Board Appointed Officers, have an affirmative duty to report misconduct, discrimination, fraud, and other wrongdoing.

14. Approximately three days after Plaintiff raised concerns about gender equity and Pacheco financing, Defendant Callender as CEO of the Water District, filed a memorandum claiming that Plaintiff's complaints constituted discrimination against men.

15. The alleged Ethics Committee of the Water District's Board, meeting without public notice or agenda in violation of the Brown Act, authorized the Water District through Defendant Callender to conduct an investigation against Plaintiff for alleged discrimination against men.

16. The Board did not vote on whether to use public funds for the investigation into Plaintiff, and Plaintiff was not given an opportunity to speak before the decision was made.

17. The Water District retained outside counsel Samantha Zutler, who was adverse to Plaintiff in the context of the investigation, and retained Camille Hamilton Pating of Meyers Nave LLP to conduct investigations of potential Board policy violations. At no point was Plaintiff under any criminal investigation.

18. When the investigation began, investigator Camille Hamilton Pating was not briefed on Plaintiff's gender-bias memorandum regarding committee assignments.

19. After discussions, The Water District agreed to include a shorter investigation into whether there was institutional gender bias against women at Valley Water.

20. Over the course of several weeks, Plaintiff demanded indemnification historically provided for Board Directors who requested it.

21. In a closed session meeting from which Plaintiff was excluded, without giving Plaintiff an opportunity to speak on her behalf, the Board voted to deny Plaintiff her indemnification. No explanation was provided to Plaintiff.

22. During the period in which the facts underlying this action took place up through the present, Plaintiff has continued to demand her indemnification rights, but each time Plaintiff demanded her rights, the District denied them to her without explanation. Plaintiff participated in an initial interview with the investigators in April 2023 and in nearly 30 hours of interviews in



BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

July 2023. Investigator Pating advised Plaintiff in late August 2023 that her work was complete and that outside counsel Zutler would not alter the report.

23. Pating also informed Plaintiff that the only complainants in the investigation were CEO Callender and District Counsel Orellana, both Board Appointed Officers.

24. Defendants investigated Plaintiff for alleged Governance Rule violations that were not violations at the time, because the Governance Rules only provided for complaints made by staff, excluding Board Appointed Officers; yet, the investigation was launched based solely on complaints made by the CEO and later by the District Counsel, both Board Appointed Officers.

25. At the time, no complaints were submitted by anyone other than these two Board Appointed Officers, so the investigation lacked authority to proceed on that ground in addition to the lack of authority pursuant to the Brown Act.

26. Others who were not Board Appointed Officers, including direct reports of the CEO, were solicited and/or instructed to make allegations to support CEO Callender and the Board changed the Governance Rules to include complaints by Board Appointed Officers in late 2024, after the investigation had already been underway and was nearing completion.

27. In September 2023, outside counsel Zutler notified the Board that the investigative reports were delayed due to additional allegations, which Plaintiff was not notified of or given an opportunity to address.

28. In mid-November 2023, Pating stated the investigation had concluded and would not include new allegations from Plaintiff.

29. Reports dated December 22, 2023, were not made available to the Board until January 29, 2024, and were still deemed drafts.

30. Outside counsel Zutler suggested, confirmed by the Board Clerk and others, that changes were still being made to the reports, possibly including changes involving identities of witnesses.

31. Only one physical copy of the investigative reports was made available for sequential director review, and no digital copy was provided to Plaintiff.

32. Plaintiff requested a digital or printed copy of the reports from the Board Clerk, who confirmed possession of the digital master file but declined to print another copy citing a

lack of time.

33. When Plaintiff reviewed the files that had been presented to her, she noticed that the documents included statements and related evidence that potentially evidenced multiple legal violations by District executives and Directors.

34. Plaintiff also observed that the evidence provided in the report did not support the report's findings, for example, by misquoting testimony or meeting transcripts, or citing witnesses for corroboration that did not exist.

35. At the time of reviewing the files, Plaintiff was aware of the District's alleged history of destroying public records that reflected poorly on the District and/or its Officers and Directors. For these reasons, and the compelling evidence in the documents that both incriminated the District and redeemed the Plaintiff, the Plaintiff, under advice from trusted third parties, recognized her legal and ethical obligation to take home a preservation copy of the documents.

36. Plaintiff informed the Clerk that she would likely bring home the available printed copy due to the voluminous nature of the reports.

37. At the time Plaintiff took the printed copy, there was no prohibition on bringing the file home, and directors routinely received confidential digital materials for closed sessions.

38. On January 29, 2024, Plaintiff removed from Valley Water headquarters that physical print-out which had been presented to her.

39. Having already informed the Clerk, an Officer that reports to the Board, that she would be taking the documents home, the Plaintiff did not hide the fact that she was doing so. Plaintiff exited through the front door, greeted security, and put the documents into her car.

40. Later, Plaintiff spent a large amount of time annotating the documents, making significant notes on the physical copy of the investigative reports mostly relating to perceived wrongdoing by the District, as well as notating and highlighting testimony that had been misquoted and/or miscited in the Report's conclusions.

41. Since bringing home the files, Plaintiff has not shared them with anyone, including her attorney or spouse.

42. Plaintiff disagreed with the Water District's position that the reports were confidential and could not be shared with her counsel or spouse but nonetheless abided by the

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

Water District's assertion of privilege and did not copy, forward, or share the reports with anyone, including her attorney and spouse, even as the District filed a lawsuit against her for possessing them.

43. The fact that Plaintiff was prohibited from sharing the documents with her attorney placed her at a serious disadvantage in defending the District's motions that she should be ordered to destroy the documents or return them to the District for destruction.

44. Plaintiff was confident that returning the evidence the District's wrongful acts would lead to its destruction, so held a moral, legal and fiduciary obligation to the public to ensure that they were not destroyed.

45. At the Water District's request and to prevent threatened litigation, Plaintiff signed a sworn declaration confirming that she had not shared the documents and commiting not to share them in the future. During these settlement discussions, after Plaintiff had signed away her rights to share the documents and during a religious holiday observed by Plaintiff the Water District nevertheless filed a lawsuit against her.

46. On February 29, 2024, Plaintiff sent three photos of excerpts of the reports to Director Barbara Keegan, who had previously read the reports, and deleted these photos at the Water District's demand despite believing that she had the right to share the photos given the serious nature of the contents they exposed.

47. On March 26, 2024, Plaintiff described or paraphrased aspects of the reports in three posts and reposts on Twitter/X, which she deleted at the Water District's demand despite believing that her statements were privileged and protected.

48. Aside from the photos and Twitter/X posts, Plaintiff has not made any physical or digital copies of the reports or transmitted them to any person or entity, including her attorney or spouse.

49. CEO Callender, before he recently resigned following reports affirming complaints filed by multiple complainants of sexual harassment, retaliation, and unethical conduct had access or could have obtained access to his own copy of the reports. In a declaration submitted to the court as part of the litigation filed against Plaintiff, the former CEO Callender admitted viewing the documents, an admission he later attempted to withdraw in a subsequent

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

declaration.

50. Plaintiff first learned from a news post that the Water District wanted the printout returned.

51. Plaintiff was never asked by anyone at the Water District to not take a copy of the reports home or to immediately return the printout she had taken home prior to reporting it to a news outlet.

52. On February 7, 2024, at approximately 9:30 PM, when both of her children were sleeping, a man wearing a shirt and hat bearing the District's official logos, rang the doorbell of Plaintiff's personal residence repeatedly, awaking both of her children and causing her dogs to bark noisily. The man and misrepresented that he was a process server with documents to provide to Plaintiff. Plaintiff asked the man to stop ringing the doorbell so she could call her spouse for advice, but the man refused to stop ringing the doorbell. Ultimately Plaintiff accepted a printout of a set of documents from the perceived process server.

53. Despite disrupting Plaintiff at her personal residence while it was dark outside, the perceived process server did not ask for Plaintiff's signature. Nor did the perceived server ask Plaintiff to return the documents. Rather, all the man did was hand Plaintiff a report of an investigation of whether Plaintiff took home the documents – something that Plaintiff never denied. This report primarily consisted of photos taken by cameras tracking Plaintiff's steps through the District Headquarters and to and from her car, as if to intimidate Plaintiff.

54. The documents handed to Plaintiff by the unfamiliar man late at night while her children were sleeping could have been sent by email but instead were delivered in a manner that resulted in Plaintiff experiencing intimidation.

55. Plaintiff was later informed that the person who represented himself as a process server was actually a private investigator hired by the District.

56. On February 8, 2024, Officer Amel Sahnic of the San Jose Police Department called Plaintiff to investigate if Plaintiff had "stolen" valuable items from the District. Plaintiff explained that she had been given the documents for review, and that as a Board Director, it was expected and normal practice for her to review Board materials at home.

57. In the conversation with the police officer, Plaintiff offered to reimburse the Water

District for printing costs for the printout of the documents if requested. Plaintiff never heard back regarding that offer.

58. Through its CEO, and to the press, the Water District reported spending approximately $600,000 of public funds on the investigation into alleged discrimination by Plaintiff through approximately October, 2023.

59. Plaintiff was denied reimbursement for legal fees associated with the investigation, despite prior practice of reimbursing directors for such fees and despite Plaintiff asking for reimbursement on a regular and repeated basis.

60. CEO Callender, certain Board Directors, and/or the District conducted a public misinformation campaign accusing Plaintiff of stealing "classified" documents, a false accusation they to the community, the press, government agencies, regulatory bodies, industry organizations, activist groups, elected officials, and other individuals.

61. Plaintiff was subsequently subjected to serious harassment.

62. During this time, Plaintiff was made aware of ongoing misconduct by the former CEO and District Counsel through privileged communications from current and former staff members, including confidential requests  for protection from CEO Callender, citing Callender's history of allegedly firing and/or retaliating against former and current staff and consultants who spoke out against him or the District.

63. CEO Callender demanded the identities of staff who contacted Plaintiff and instituted and/or enforced an existing rule barring staff from speaking with Plaintiff, even allegedly terminating the employment of an employee allegedly in response to that employee speaking briefly with Plaintiff in a public setting.

64. CEO Callender attended and disrupted Plaintiff's staff meetings, rescinded invitations to events from third parties to Plaintiff, and prohibited Plaintiff from meeting with staff members or speaking at press events.

65. CEO Callender directed representatives and staff to distribute inflammatory false accusations about Plaintiff, including to personal contacts, elected officials, governmental bodies, and activist organizations.

66. At a time that Plaintiff cannot identify, the Water District expunged ten years of

CEO Callender's employment records, including a prior settlement regarding his sexual misconduct and a recommendation made by an investigator that his employment be terminated.

67. On information and belief, and as affirmed in a 2020 investigation against him, Callender has a documented history of violent and abusive behavior: he pled no contest to a physical assault involving a racquetball paddle and has been the subject of numerous complaints of sexual harassment, which contributed to his departure from the District.

68. Despite Plaintiff's numerous and ongoing requests in writing, Water District denied Plaintiff mandatory and/or discretionary statutory indemnification previously offered to any similarly situated person who requested it.

69. The District conducted its investigation against Plaintiff, which under its own rules, was not supposed to take longer than three months, for almost a year.

70. The District's investigation had numerous irregularities including but not limited to the irregularities and potential legal violations addressed herein, such as including complaints never told to Plaintiff, and making allegations against Plaintiff by individuals who were not aware that they were being included as a claimant.

71. The nature of complaints investigated included no allegations of ethical wrongdoing or illegal conduct. The entirety of the investigation was based on statements made by Plaintiff, almost exclusively as general statements of fact and opinion in public meetings.

72. The investigation's "findings" included 24 fully or partially "unsubstantiated" conclusions to the 25 allegations.

73. Defendants then used the few trivial allegations that remained as purported grounds for an unwarranted and unprecedented severe censure that included removal of almost all of Plaintiff's pay and official duties.

74. The Defendant Board approved only five of the seven proposed censure actions, yet the District announced, the Board and District proceeded to enforce all seven.

75. Similarly, the Board said at the time of censure that the unprecedented censure actions would last only one year, which the Board and District also disregarded over time.

76. The Water District made a false police report against Plaintiff and has never articulated any violation of Board ethics or other authority requiring directors to review reports



BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

only in a designated room.

77. Defendants intentionally issued press releases alleging facts they knew were false: e.g., that Plaintiff was accused and/or censured for "racist" actions, which was not true.

78. All of the negative treatment discussed above, in Paragraphs 8 through 77 incorporated herein by reference, began immediately following Plaintiff's attempts to reveal fraud relating to federal loans worth billions of dollars in taxpayer monies being taken by the Water District, in addition to Plaintiff's complaints of institutional discrimination against women, including discrimination already affirmed by several previous investigations, as well as complaints Plaintiff made regarding unethical and potentially illegal actions taken by the former CEO and former District Counsel.

79. The Board, through its policies, procedures, customs, and practices governing investigations, discipline, director access to information, and public communications, authorized, directed, approved, condoned, and/or ratified the challenged actions alleged herein, including the initiation and continuation of the retaliatory investigation, the restriction and control of investigative materials, the use of public funds to pursue the investigation and related actions, the imposition of unprecedented censure and removal of duties and pay, and the issuance of false or misleading public statements. The Board had actual and/or constructive knowledge of the relevant conduct through presentations, notices, communications from outside counsel and Board Appointed Officers, and Board and committee proceedings, and had the authority and responsibility to supervise, discipline, and implement corrective measures, yet failed to prevent or correct the conduct and acted with deliberate indifference to the foreseeable consequences.

80. The Board further failed to adequately supervise, train, and discipline the former CEO and the former District Counsel regarding compliance with anti-discrimination, anti-retaliation, open-meetings, document-handling, and director-access policies and legal obligations; failed to ensure investigations were conducted lawfully and without retaliation; and ratified the results and uses of the investigations despite obvious indicia of bias, procedural irregularities, and policy violations, thereby causing and contributing to Plaintiff's injuries.

81. After the conclusion of the investigation against the former CEO which led to the former CEO's departure, multiple individuals, allegedly current and former District staff and/or

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

Officers, filed an investigation against the former District Counsel Carlos Orellana.

82. During a public Board Meeting, the Board voted to conduct the investigation into Orellana, and designated an Ad Hoc Board Committee that did not include Plaintiff.

83. On information and belief, and as suggested by the Board, the complaints investigated against Orellana are similar to the complaints made by Plaintiff over the course of the past years – complaints that Orellana discriminated against her on the basis of sex, gender, race, religion, and sexual orientation, as well as complaints of ethical and financial misconduct.

84. Against Plaintiff's oral and written objection, Defendants withheld any and all information about the status of the investigation against Orellana, as well as its findings, stating falsely and without explanation that Plaintiff had a "financial conflict" with the findings of the investigation against Orellana, even though Plaintiff was not a complainant in the investigation against Orellana, and in fact, at no point were the allegations made by Plaintiff against Orellana ever investigated despite numerous attempts by Plaintiff over the course of years to convince the Board to investigate them.

85. On May 26, 2026, the initial results of the investigation against Orellana were reported to the Board and to Orellana. Against the Plaintiff's repeated objection, the Board again concealed the results of the investigation from Plaintiff.

86. On the morning of May 26, 2026, the same day that initial results of the investigation against him were shared with him and with the Board, Orellana resigned from his role as District Counsel, citing "false accusations" made against him without reference to the investigation against him that had just concluded.

87. On information and belief, the investigation of the third parties' complaints against Orellana resulted in Orellana's resignation on the date that the results of that investigation were reported to the Board, excluding Plaintiff.

88. Despite requirements of the Brown Act and/or past practice, the Board refused to share the results of the investigation against Orellana. To this day, the Board has concealed the results of the investigation against Orellana.

89. Instead of investigating the similar complaints against Orellana made by Plaintiff, as it had in the case of the previously conducted investigation against Orellana, Defendants—

through Orellana—in response to the complaints alleged by Plaintiff, instead initiated another retaliatory "investigation" of Plaintiff.

90. At the time that Board launched the retaliatory investigation against Plaintiff, the Board was aware of the findings of the investigation against Plaintiff.

91. Falsely claiming that the Plaintiff had a "financial interest" in the findings of the investigation against Orellana, and despite objections from Plaintiff, the Board concealed those findings from Plaintiff.

92. Despite the fact that an investigation against Orellana had made determinations regarding similar allegations against Orellana that Plaintiff had made, the Board explicitly refused to share the results of that investigation with the separate investigation looking into whether Plaintiff's allegations were "slander or libel."

93. Plaintiff repeatedly informed both the Board and the investigator that the results of the investigation against Orellana were directly related to the investigation against Plaintiff and must be considered as part of the investigation. The District and Board nonetheless conducted the investigation without reference to the findings that had been made against Orellana.

94. Plaintiff also insisted that she be provided her indemnification so she could be represented in the investigation, given that previous investigations had led to serious financial, reputational, and other harms. Again, indemnification was refused. In its investigation, Plaintiff was falsely accused by the investigator for "refusing" to participate, without reference to the request for and denial of an attorney to represent her.

95. In further retaliation, the Board excluded Plaintiff from the meeting at which the results of that investigation were announced, and Defendants have denied Plaintiff access to the record of those proceedings and to the investigation findings other than those made in the Executive Summary already released to the public by the Board.

96. Even now, Defendants continuing their ongoing retaliation against Plaintiff. Plaintiff's participation in the protected activity of raising claims of gender discrimination and sexual harassment and/or her whistleblowing relating to former and ongoing wrongdoing, including nonexclusively, misrepresentations and material omissions in the Water District's EPA WIFIA loan and Prop 1 grant applications as well as other financial and ethical improprieties are

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

what has led to all of these pretextual investigations, denial of statutory status and pay, and exclusionary actions by Defendants.

97. The most recent "investigation" of Plaintiff, which was conducted without providing Plaintiff a reasonable ability to participate, was done as another act of ongoing retaliation. On information and belief, this recent investigation, as well as the Board's decision to announce the results of that investigation as true on October 13, 2026 were timed to harm Plaintiff's ongoing re-election campaign, to bring about a retaliatory termination of Plaintiff's elected position on the Board.

98. In the investigations Defendants have pursued against Plaintiff, purported "findings" against Plaintiff and resulting censure and discipline of Plaintiff were based, in substantial part, on rules that targeted Plaintiff and that were adopted only after both the conduct that was the subject of the investigation had already occurred and the investigation into that conduct had already begun. Defendants applied these after-the-fact, retroactively adopted rules to Plaintiff in an ex post facto manner that flouts due process and Plaintiff's constitutional rights.

99. Plaintiff has exhausted, or is in the process of exhausting, her administrative remedies as to her claims of sex discrimination, harassment, and retaliation. Plaintiff has timely filed charges of discrimination with the California Civil Rights Department ("CRD," formerly the Department of Fair Employment and Housing) and has received right-to-sue notifications.

100. Plaintiff has complied with, or is excused from, the claim-presentation requirements of the California Government Claims Act (Cal. Gov't Code §§ 810 et seq.) to the extent those requirements apply to any cause of action alleged herein. By written demand dated June 24, 2026, delivered to the Water District, Plaintiff presented her claims arising out of the retaliatory investigations, the refusal to indemnify and reimburse her defense fees and costs, and the related retaliatory conduct, and demanded that the Water District cease its retaliation and reimburse her fees and costs. On information and belief, Plaintiff's claims for fees, costs, and expenses as a public officer are exempt from the presentation requirement under Government Code section 905(c), and Plaintiff's written demand constituted substantial compliance with the presentation requirement as to her remaining claims.

/ / /

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Whistleblower Retaliation re EPA Loan Fraud (False Claims Act, 31 U.S.C. § 3730(h))

### (Against All Defendants)

101. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

102. At all relevant times, Plaintiff was an employee, contractor, or agent of the Water District within the meaning of 31 U.S.C. § 3730(h), in that she served as an elected Director charged with fiduciary and oversight responsibilities on behalf of the Water District.

103. Plaintiff engaged in protected activity under the False Claims Act by raising concerns and making disclosures, and by undertaking efforts to stop one or more violations of the False Claims Act, regarding alleged misrepresentations and omissions in Defendants' applications for federal EPA WIFIA loans and related federal funds, which implicated potential fraud against the United States. Plaintiff in good faith believed, and a reasonable person in her position would believe, that the Water District was possibly committing fraud against the government.

104. On information and belief, Defendants had knowledge of Plaintiff's protected activity, as Plaintiff's disclosures and advocacy regarding institutional fraud and misuse of public funds were made directly to the Board and relevant District officials.

105. Defendants subjected Plaintiff to adverse actions affecting the terms, conditions, and privileges of her position, including but not limited to authorizing and conducting a retaliatory investigation, denying reimbursement for legal fees, restricting access to investigative materials, imposing a censure that removed nearly all of her pay and official duties, and engaging in a campaign of harassment and exclusion beginning immediately following Plaintiff's protected activity. Such actions were reasonably likely to deter a person from engaging in protected activity.

106. The Board, as policymaker and final authority for the Water District, authorized, directed, approved, condoned, and/or ratified the initiation, scope, funding, and continuance of the retaliatory investigation and related actions, including censure and removal of pay and duties, or was deliberately indifferent to a known or obvious risk that such actions would violate

Plaintiff's rights, and its policies, customs, and practices were a moving force causing Plaintiff's FCA retaliation damages.

107. There is a causal connection between Plaintiff's protected activity and the adverse actions taken by Defendants, as the adverse actions closely followed Plaintiff's disclosures regarding suspected fraud and were motivated by retaliatory animus.

**SECOND CAUSE OF ACTION**

**FEHA — Sex Discrimination, Harassment, and Retaliation (Gov't Code § 12940 et seq.)**

**(Against Defendant Water District and Defendant Water District Board)**

108. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

109. The Water District is an "employer" within the meaning of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12926. Plaintiff is a member of a protected class based on sex and was qualified for her position as a Director of the Water District.

110. Plaintiff suffered adverse actions affecting the terms, conditions, and privileges of her position, including denial of committee assignments, a retaliatory investigation, denial of reimbursement for legal fees, censure removing nearly all of her pay and official duties, and exclusion from opportunities and benefits.

111. On information and belief, the circumstances give rise to an inference of discriminatory and retaliatory motive, as similarly situated male Directors were treated more favorably, and the adverse actions followed Plaintiff's protected activity in opposing sex discrimination.

112. Plaintiff was also subjected to unwelcome harassment because of her sex that was sufficiently severe or pervasive to create a hostile work environment, and Defendants failed to take reasonable steps to prevent and correct the harassment and retaliation.

113. On information and belief, the Board's policies, customs, practices, and ratification of the adverse actions, and its failure to supervise and correct the CEO and Counsel, were substantial factors causing Plaintiff's FEHA harms. Plaintiff has exhausted, or is in the process of exhausting, her administrative remedies with the CRD as alleged above.

/ / /

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983 Civil Rights Violation/Discrimination (Equal Protection)**

**(Against All Defendants)**

114. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

115. Defendants, acting under color of state law, deprived Plaintiff of rights secured by the Constitution, including the right to equal protection under the Fourteenth Amendment, by intentionally discriminating against Plaintiff on the basis of sex and in retaliation for protected activity. Defendants Callender and Orellana are sued in their individual capacities for damages under this cause of action.

116. On information and belief, Defendants' conduct was motivated by purposeful discriminatory intent, as evidenced by the disparate treatment of Plaintiff compared to similarly situated male Directors and the sequence of retaliatory actions following Plaintiff's protected activity.

117. On information and belief, the Board's final policymaking authority, official policies and customs, and ratification of the challenged conduct were moving forces behind the deprivation of Plaintiff's equal protection rights, and the Board's deliberate indifference to known violations caused Plaintiff's damages.

**FOURTH CAUSE OF ACTION**

**Breach of Contract/Statutory Indemnification — Refusal to Indemnify and Pay Fees**

**(Against Defendant Water District and Defendant Water District Board)**

118. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

119. As an elected Director, Plaintiff is an "employee" of the Water District within the meaning of California Government Code sections 810.2 and 995, and is entitled to a defense and to indemnification for legal fees and costs necessarily incurred in defending the formal investigations and civil processes initiated against her on account of acts or omissions within the scope of her service. Cal. Gov't Code §§ 825, 995, 995.2, 996.4.

120. By written demand dated June 24, 2026, Plaintiff requested that the Water District

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

provide for her defense and reimburse the legal fees and costs she incurred in defending the formal investigations and civil processes initiated against her. The Water District failed and refused to do so.

121. In addition and in the alternative, on information and belief, an enforceable obligation arose from the Water District's established practice and policy of indemnifying and reimbursing Directors and Officers for legal fees and costs incurred in connection with work-related investigations upon request. Plaintiff performed all conditions required of her, including by participating in the investigation processes and incurring legal fees and costs.

122. Defendants breached their statutory and contractual obligations by refusing to indemnify Plaintiff and reimburse the fees and costs she incurred in connection with the investigations and related civil processes. On information and belief, the Board, with authority over indemnification practices, reimbursement decisions, and approval of expenditures, authorized, directed, approved, or ratified the denial of Plaintiff's reimbursement.

123. As a direct and proximate result, Plaintiff has suffered damages in the form of unpaid fees and costs, in an amount to be determined at trial, together with interest and her fees and costs incurred in enforcing this obligation.

**FIFTH CAUSE OF ACTION**

**42 U.S.C. § 1985(3) — Conspiracy to Interfere with Civil Rights**

**(Against All Defendants)**

124. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

125. On information and belief, Defendants, and each of them, conspired and agreed among themselves to deprive Plaintiff of the equal protection of the laws and of equal privileges and immunities under the laws, motivated by invidious, class-based discriminatory animus against Plaintiff by reason of her sex.

126. On information and belief, in engaging in the invidiously discriminatory conduct alleged herein, the individual Defendants acted outside the lawful scope of their authority and not in furtherance of any legitimate purpose of the Water District, and are therefore capable of forming and did form the conspiracy alleged.

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

127. One or more Defendants committed overt acts in furtherance of the conspiracy, including authorizing and conducting the retaliatory investigation, denying Plaintiff access to materials, and engaging in a campaign of harassment and exclusion.

128. On information and belief, the Board, through its committees, members, and agents, joined and/or ratified the conspiracy, and by policy, practice, and approvals, facilitated, encouraged, or refused to prevent overt acts taken to further the conspiracy, thereby causing Plaintiff's injuries.

129. As a result of Defendants' conspiracy and overt acts, Plaintiff suffered injury to her person and deprivation of rights and privileges secured by the Constitution and federal law.

**SIXTH CAUSE OF ACTION**

**42 U.S.C. § 1986 — Action for Neglect to Prevent Conspiracy**

**(Against All Defendants)**

130. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

131. On information and belief, Defendants, having knowledge that the wrongs conspired to be done and mentioned in Section 1985 were about to be committed, and having the power to prevent or aid in preventing the commission of the wrongful acts, neglected or refused to do so, thereby causing Plaintiff injury.

132. On information and belief, the Board, with actual and/or constructive knowledge of the conspiracy and overt acts, and possessing authority to supervise, discipline, and implement corrective measures regarding the CEO and Counsel, neglected or refused to act, and thereby is liable under Section 1986.

133. This cause of action is brought within one year after the accrual of the cause of action based on a continuing course of misconduct, as required by 42 U.S.C. § 1986.

**SEVENTH CAUSE OF ACTION**

**42 U.S.C. § 1983 — Violation of First Amendment Rights**

**(Against All Defendants)**

134. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

135. Defendants, acting under color of state law, deprived Plaintiff of her rights under the First Amendment by retaliating against her for protected speech on matters of public concern, restricting her ability to communicate with counsel, staff, and the public, and engaging in conduct that chilled her exercise of free speech, association, and petition rights. Defendants Callender and Orellana are sued in their individual capacities for damages under this cause of action.

136. The adverse actions taken against Plaintiff were materially adverse and went well beyond the ordinary give-and-take of the political process: Defendants imposed a censure that removed nearly all of Plaintiff's pay and official duties, thereby depriving her of authority she enjoyed by virtue of her popular election and preventing her from performing the functions of her office.

137. On information and belief, Defendants' actions were motivated by Plaintiff's exercise of her First Amendment rights and were intended to deter or punish her for engaging in protected activity, and the adverse actions would not have been taken absent retaliatory motive.

138. On information and belief, the Board's official policies, customs, and ratification were moving forces behind the First Amendment violations, and the Board's deliberate indifference to known retaliatory conduct caused Plaintiff's damages.

**EIGHTH CAUSE OF ACTION**

**42 U.S.C. § 1983 — Violation of Fourteenth Amendment Procedural Due Process (Stigma-Plus / Deprivation of Liberty Interest Without a Name-Clearing Hearing)**

**(Against All Defendants)**

139. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

140. Defendants, acting under color of state law, publicly disclosed stigmatizing statements about Plaintiff, including accusations that she had "stolen" confidential or "classified" District documents and that she had engaged in "racist" conduct. Defendants Callender and Orellana are sued in their individual capacities for damages under this cause of action.

141. These accusations charged Plaintiff with dishonesty and moral turpitude, are false, and their accuracy is contested by Plaintiff.

142. Defendants coupled these stigmatizing accusations with the alteration or denial of

a tangible interest, including the imposition of a censure that removed nearly all of Plaintiff's pay and official duties, thereby satisfying the "plus" element of a stigma-plus claim.

143. On information and belief, Defendants disseminated the stigmatizing statements publicly, including to the community, activist organizations, and the press, and the statements seriously damaged Plaintiff's reputation and foreclosed or significantly impaired her ability to pursue her chosen occupation.

144. Defendants deprived Plaintiff of a constitutionally protected liberty interest without due process of law by failing to afford her notice and a meaningful opportunity to clear her name at a hearing before or promptly after the deprivation.

145. On information and belief, the Board's final policymaking authority, official policies and customs, and ratification of the challenged conduct were moving forces behind these deprivations, and its deliberate indifference caused Plaintiff's injuries.

**NINTH CAUSE OF ACTION**

**Violations of the Brown Act (Gov't Code §§ 54950–54963)**

**(Against Defendant Water District and Defendant Water District Board)**

146. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

147. Plaintiff is an interested person within the meaning of the Brown Act, as she is a member of the public and an elected Director of the Santa Clara Valley Water District, with a direct interest in the actions and proceedings of the District's legislative bodies.

148. Defendant Water District is a local agency, and its Board and committees constitute legislative bodies subject to the Brown Act's open meeting requirements.

149. On information and belief, Defendants, acting as or through the legislative body of a local agency, committed violations of the Brown Act by conducting meetings of the Ethics Committee without public notice or agenda, and by authorizing investigations and taking actions against Plaintiff outside of properly noticed public meetings, thereby depriving Plaintiff and the public of transparency and participation as required by law.

150. Plaintiff seeks prospective relief only under this cause of action—declaratory, injunctive, and mandamus relief under Government Code section 54960 to stop and prevent ongoing and threatened future violations of the Brown Act, together with costs and attorneys' fees



BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

under Government Code section 54960.5—and does not seek damages under this cause of action.

151. To the extent any relief sought requires a pre-litigation demand, Plaintiff has satisfied, or will timely satisfy, the demand prerequisites of Government Code sections 54960.1 and 54960.2, including by serving a written cure-and-correct demand and/or a cease-and-desist letter on the legislative body, and Plaintiff will amend as necessary to allege compliance.

152. Plaintiff lacks an adequate remedy at law for the ongoing and threatened future violations alleged herein.

153. On information and belief, the Board, as the legislative body and through its committees, was directly responsible for the Brown Act violations and for ratifying and enforcing actions taken in violation of open-meeting requirements, and is therefore subject to declaratory and injunctive relief.

**TENTH CAUSE OF ACTION**

**California False Claims Act Retaliation (Cal. Gov't Code § 12653)**

**(Against All Defendants)**

128. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

129. At all relevant times, Plaintiff was an employee, contractor, or agent of the Water District within the meaning of California Government Code section 12653.

130. Plaintiff engaged in protected activity by making disclosures and undertaking lawful efforts to stop one or more violations of the California False Claims Act, including by raising concerns regarding misrepresentations and omissions in the Water District's applications for California Proposition 1 grant funds and other public funds.

131. On information and belief, Defendants knew of Plaintiff's protected activity and, because of it, subjected her to retaliation, including authorizing and conducting the retaliatory investigation, imposing a censure that removed nearly all of her pay and official duties, denying reimbursement of her legal fees, and engaging in a campaign of harassment and exclusion.

132. As a direct and proximate result, Plaintiff is entitled to all relief available under Government Code section 12653, including reinstatement, two times the amount of back pay, interest, special damages, and, where appropriate, punitive damages, together with litigation costs and reasonable attorneys' fees.

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

**ELEVENTH CAUSE OF ACTION**

**Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1)**

**(Against All Defendants)**

133. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

134. Defendants, by threat, intimidation, or coercion, interfered with or attempted to interfere with Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States and of the State of California, including her rights to free speech, to petition, and to equal protection.

135. On information and belief, the coercive conduct included sending a Water District employee to Plaintiff's personal residence late at night to falsely pose as a process server serving papers regarding an investigation into whether Plaintiff "stole" District documents, and making a false police report against Plaintiff—conduct undertaken with the specific intent and particular purpose of deterring and punishing Plaintiff's protected activity.

136. Defendants Callender and Orellana are sued in their individual capacities under this cause of action.

137. As a direct and proximate result, Plaintiff suffered injury and is entitled to actual and statutory damages and, where appropriate, punitive damages, together with attorneys' fees under Civil Code section 52.1.

**TWELFTH CAUSE OF ACTION**

**Defamation**

**(Against Defendant Callender)**

138. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

139. Defendant Callender made false statements of fact about Plaintiff to third persons, including statements that Plaintiff had "stolen" confidential or "classified" District documents and that Plaintiff had engaged in or been censured for "racist" conduct.

140. These statements were false and were published to third parties, including

members of the community, activist organizations, and the press, and were not privileged.

141. The statements are defamatory per se in that they charge Plaintiff with criminal conduct and tend to injure her in respect to her office and profession.

142. On information and belief, Callender made the statements knowing they were false or with reckless disregard for their truth, and with actual malice. Callender is sued in his individual capacity under this cause of action.

143. As a direct and proximate result, Plaintiff suffered injury to her reputation, humiliation, and emotional distress, and is entitled to general, special, and punitive damages in amounts to be proven at trial.

**THIRTEENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(Against Defendants Callender and Orellana)**

144. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

145. Defendants engaged in extreme and outrageous conduct, including orchestrating and continuing a retaliatory investigation, publicly accusing Plaintiff of theft and of "racist" conduct, sending a person to her home to falsely pose as a process server, directing staff to harass Plaintiff and her family at her home, and causing a false police report to be made against her.

146. On information and belief, Defendants engaged in this conduct intentionally, or with reckless disregard of the probability of causing Plaintiff severe emotional distress.

147. As a direct and proximate result, Plaintiff suffered severe emotional distress and is entitled to general and punitive damages in amounts to be proven at trial. Defendants Callender and Orellana are sued in their individual capacities under this cause of action.

**PRAYER FOR RELIEF**

1. Declare that Defendants Santa Clara Valley Water District, Santa Clara Valley Water District Board of Directors, Enrico Callender, and Carlos Orellana violated Plaintiff's rights under the False Claims Act, the California Fair Employment and Housing Act (FEHA), 42 U.S.C. § 1983, 42 U.S.C. §§ 1985(3) and 1986, the First and



BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

Fourteenth Amendments to the United States Constitution, the California False Claims Act, and the Bane Act; breached statutory and contractual obligations to Plaintiff; and/or violated the Brown Act (Cal. Gov't Code §§ 54950–54963) by conducting meetings and authorizing actions without proper public notice or agenda, thereby depriving Plaintiff and the public of transparency and participation as required by law.

2. Enjoin Defendants Santa Clara Valley Water District, Santa Clara Valley Water District Board of Directors, Enrico Callender, and Carlos Orellana from engaging in further acts of retaliation, discrimination, or deprivation of Plaintiff's constitutional and statutory rights, including but not limited to sex discrimination, retaliation for protected activity, interference with Plaintiff's rights to free speech, association, and petition, and/or from conducting meetings or authorizing actions in violation of the Brown Act, and require compliance with all open-meeting and public-notice requirements for legislative bodies of local agencies.

3. Direct Defendants Santa Clara Valley Water District and Santa Clara Valley Water District Board of Directors to reinstate Plaintiff to all committee assignments, opportunities, pay, duties, and benefits for which she is qualified and from which she was excluded as a result of unlawful discrimination or retaliation, or, in the alternative, award front pay in lieu of reinstatement.

4. Award Plaintiff compensatory damages against Defendants, including but not limited to back pay, two times the amount of back pay under Government Code section 12653, lost benefits, and damages for emotional distress, pain and suffering, and reputational harm, in amounts to be determined at trial.

5. Award Plaintiff all unpaid legal fees and costs incurred in connection with the work-related investigations and civil processes initiated against her, as statutory indemnification and/or damages, in an amount to be determined at trial.

6. Award Plaintiff punitive damages against Defendants Enrico Callender and Carlos Orellana, to the extent permitted by law, for their willful and malicious conduct in

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

violating Plaintiff's constitutional and statutory rights.

7. Award Plaintiff reasonable attorneys' fees and expert witness fees as authorized by 42 U.S.C. § 1988, Cal. Gov't Code §§ 12965(b), 12653, and 54960.5, Cal. Civ. Code § 52.1, and/or any other applicable law.

8. Award Plaintiff prejudgment/post-judgment interest as permitted by law.

9. Award Plaintiff costs of suit incurred herein.

10. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands and requests a trial by jury on all claims asserted herein.

Dated: October 9, 2026

**BROTHERS SMITH LLP**

By:______________________________
Evan C. Nelson
Attorneys for Plaintiff
REBECCA EISENBERG

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA